[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After trial, considering all of the provisions of Conn. Gen. Stat. 46b-81c et. seq., the court makes the following findings:
1. The plaintiff (whose maiden name was Maureen Leahy) and the defendant were intermarried at Harwichport, Massachusetts, on September 7, 1968.
2. The plaintiff has been a resident of the State of Connecticut more than one year next preceding the date of the filing of this complaint.
3. The marriage of the parties has broken down irretrievably, and there is no reasonable prospect of a reconciliation.
4. The plaintiff and the defendant have two minor children, issue of this marriage, whose names and dates of birth are as follows:
Sarah Davis, born October 1, 1976
Timothy Davis, born January 12, 1978.
5. No other minor children have been born to the plaintiff-wife since the date of the marriage of the parties.
6. Neither the plaintiff nor the defendant nor are the minor children presently receiving any public aid or assistance from the State of Connecticut. CT Page 6229
CUSTODY AND VISITATION
The court awards joint custody of the two minor children with their primary residence remaining with the plaintiff. The court has been asked by the defendant to set up visitation schedules for the minor children with the father. It was the defendant's testimony that the children feel guilty visiting him because they feel as though they are betraying their Mom. The record shows that one child is 15 and the other will soon be 17 years old. Considering the age of the children this court will not set a schedule of visitation. In this day and age, young adults of these ages are capable of deciding for themselves when and if to visit their father. Children vote with their feet and it is the court's opinion that if some inbalance results initially that the process will eventually even itself out. This court finds no credible evidence that the mother discourages her children from visiting their father. In fact, the record shows that the plaintiff possessed a very intelligent and forthright attitude that recognized that the children needed to see their father and she encouraged them to do so. To order a schedule here would basically render these young adults' minds and feelings useless.
CHILD SUPPORT AND TAX DEDUCTIONS
The defendant shall pay child support in the amount of $207.00 per week. The support shall be broken down as $136.00 for Timothy and $71.00 for Sarah. The defendant shall claim Sarah for the 1993 and 1994 tax year and Tim for the 1996 year. The plaintiff shall claim Tim for the 1933, 1994 and 1995 years.
PENSIONS
The plaintiff is an employee of the Simsbury Board of Education and as such she contributes solely to the Connecticut State Teachers' Retirement Fund. The record shows she is not eligible for social security retirement on her own account and that she would also be ineligible to collect off her husband's account. This is due to an offset applied to her which is based upon the income she receives from the teachers' retirement fund. The defendant had an actuary testify as to what the present value of the plaintiff's future benefits are in comparison to the defendant's pension. The plaintiff objected to the testimony and pointed the court to the well-reasoned decision of Grosch v. Grosch, 7 Conn. L.RPTR. No. 21, page 614 (December 21, CT Page 6230 1992) Brennen, J.
This court agrees with the court in Grosch, supra, that a present value or a future benefit is beset with numerous contingencies. This court will apply the $35,000 present figure in the plaintiff's affidavit. It is a finding of this court that each party will keep and maintain their individual pensions.
ALIMONY
Each side, during the trial, waived their right to periodic alimony.
VALUATION OF MARITAL ASSETS
The only real contested asset was the home located in Harwichport on the Cape. Each side brought in an expert to testify as to the value. After listening to the testimony and evaluating the submitted evidence, this court finds that the value of the house to be $228,000. The comparables used by the plaintiff's expert were much more in line with the house in question.
Net Marital Assets
IRA Plaintiff $ 16,817
IRA Defendant 34,003
Savings Bonds — Defendant 2,050
401K — Defendant 108,000
Lots in Brewster 104,000
Harwichport House after mortgage 160,000
 Simsbury House after mortgage 169,000 ________
$593,867
FAULT CT Page 6231
The evidence shows that the defendant began having an affair with his neighbor who lives very close to the family home. For over a four year period the defendant could not decide with whom he would live. During this period of time the woman whom he was seeing became divorced, the defendant being the cause of the breakup of that marriage. The plaintiff, with practically no support from the defendant, had to maintain her household with the four children alone. The record shows that she struggled with her children to allow them to prosper and succeed in high school and eventually the two oldest children now attend college. The plaintiff cleverly and with strength keep the family intact and has used every means possible to allow her college children to advance at school. Clearly the fault causing the breakdown of the marriage lies with the defendant.
DIVISION OF MARITAL ASSETS
After taking into consideration the facts as testified before this court and weighing appropriately the statutory factors contained in Conn. Gen. Stat. 46b-81, the court divides the marital property thusly:
Plaintiff Defendant
Her IRA His IRA
Harwichport House His 401K
Simsbury House Brewster Lots (2)
Savings Bonds
EXEMPT ACCOUNTS
This court specifically exempts from the marital distribution the children's UGMA accounts. It is the order of this court that the UGMA accounts remain in the children's names. This court also exempts the plaintiff's annuity account of $5,690. The evidence clearly shows that this account was started solely by the plaintiff after the divorce was filed and that the defendant did not contribute to the account in any way.
CREDIT FOR FATHER'S FINANCIAL CONTRIBUTION CT Page 6232
The evidence in the records shows that the plaintiff's father contributed $58,000 to the plaintiff during the marriage. The court finds that $20,000 of that money was set aside by the plaintiff for her children in the UGMA account. The balance of the money went towards the purchase price of the property owned by the parties. In the plaintiff's proposed orders, she requests this court to give her a credit for the approximately $35,000 that was invested in the property. This court disagrees. The court has taken care of the UGMA accounts by leaving them intact for the benefit of the children. The remainder, although coming from the plaintiff's father basically was used to allow the purchase of the properties which the parties are now dividing. Based upon the court's division to allow another credit for the father's gifts would be basically to ignore the present distribution and count the money twice against the defendant.
LIFE INSURANCE
The court orders that the defendant maintain life insurance in the amount of $250,000 with the children named as the primary and irrevocable beneficiaries until the youngest child turns eighteen. Thereafter the plaintiff shall be named beneficiary in constructive trust for the children until the youngest child turns twenty-two or when there are no children attending college and/or graduate school, whichever comes first. The court recognizes that there is presently a term life policy in effect for $500,000. The parties are ordered to explore whether the present policy is the most cost effective. If so, the present financial arrangement where the defendant reimburses the plaintiff will remain in effect. The defendant is to provide a certificate of insurance each year at the renewal period.
MEDICAL INSURANCE
The plaintiff shall maintain medical and dental insurance as available through her employment for the benefit of the children. All unreimbursed medical, dental, psychiatric, psychological, orthodontic, counseling and prescriptive expenses shall be equally divided between the parties. In the event the proper insurance is not available to the plaintiff through her employment, the defendant must provide the same if available through his employment. In the event neither party has the insurance available through their employment, they are to purchase the insurance and split the cost equally. CT Page 6233
EXCHANGE OF INCOME TAX RETURNS
Each year until the youngest child turns eighteen, the parties shall exchange their income tax filings for both Federal and State returns. Each party will mail their returns to each other within 14 days of submission to the proper authorities.
COUNSEL FEES
Each party shall be responsible for their own counsel fees and the debts listed on their affidavits and hold each other harmless for the listed debts.
EXECUTION OF DEEDS AND OTHER DOCUMENTS
Each party, within 30 days, shall execute and deliver to the opposing counsel all documents necessary to effectuate orders of this court.
EXCHANGE OF PERSONAL PROPERTY
The court will order that all personal items listed in Defendant's memorandum and proposed order be awarded to the defendant. All items listed in one thru six and in item seven the court will order all tools relating to automobile repair, log splitter and contents of his office only.
Dissolution of the marriage is granted.
Norko, J.